# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46118

PETER NEMETH and MARY M. NEMETH, )
husband and wife, and as Co-Trustees of THE )
PETER AND MARY NEMETH FAMILY )
TRUST, dated April 28, 2009, )
                                                )

   Plaintiffs-Appellants, )

v. )
                                                )

SHOSHONE COUNTY, a political )
subdivision of the State of Idaho acting )
through the SHOSHONE COUNTY BOARD )
OF COMMISSIONERS, MIKE )
FITZGERALD, JAY HUBER, and JOHN )
HANSEN, Commissioners in their official )
capacities, )
                                                )

   Defendants-Respondents. )

Boise, August 2019 Term

Opinion filed: November 26, 2019

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Shoshone County. Scott Wayman, District Judge.

The judgment of the district court is <u>reversed and remanded</u>.

Lukins & Annis, PS, Coeur d'Alene, for Appellants. Mischelle Rae Fulgham argued.

Givens Pursley, LLP, Boise, for Respondents. Christopher H. Meyer argued.

_____

MOELLER, Justice.

    This case concerns the extent of Idaho's jurisdiction to validate a right-of-way across federal lands—a recurring source of litigation throughout the West. Peter Nemeth and his wife Mary Nemeth (now deceased), and Peter Nemeth acting as trustee of the Peter and Mary Nemeth Family Trust (collectively, "the Nemeths"), petitioned Shoshone County to validate a public right-of-way across federal land pursuant to Idaho Code section 40-204A and United States

1

Revised Statute 2477 ("R.S. 2477"). The right-of-way follows a road ("the Road") which crosses federal land that Nemeths claim historically provided access to their property and patented mining claims. When the County failed to act on the petition, the Nemeths filed a declaratory judgment action seeking validation of the right-of-way pursuant to Idaho Code section 40-208(7). On a motion from the County, the district court dismissed the complaint pursuant to I.R.C.P. 12(b)(6) on the basis that because the Road traverses federal land, only a federal court has jurisdiction to hear the claim, which must be brought under the federal Quiet Title Act (QTA), 28 U.S.C. section 2409a.

The Nemeths appealed, arguing that state courts have jurisdiction to validate rights-of-way on federal land pursuant to R.S. 2477 and that the QTA does not preempt Idaho law that provides for such validation. The County argues that the district court lacks jurisdiction because only a federal court can validate a right-of-way over disputed federal land, thereby requiring the issue to be resolved in federal court under the QTA. We reverse because the district court erred in dismissing the Nemeths' action on the basis that it lacked subject matter jurisdiction.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Granite Gulch Road (the Road) is an old dirt road that provides access across National Forest Service lands to the Nemeths' real property and accompanying mining claims in Shoshone County. The Road was built in 1906 with the County investing $1,290 in the Road's development. Eighteen maps spanning from 1929 to 2003—including multiple maps produced by the U.S. Forest Service—show the location of the Road with an accompanying description. These descriptions include identifications such as "a good motor road," "an improved road," "dirt road," "primitive road," and "unimproved; 4-wheel drive road." Only in 2001 was the Road removed from Forest Service maps. In addition, other documents in the record identify the Road's original purpose as providing access for the various mines located within Granite Gulch. The record also includes information about the mines, including surveys of the buildings and equipment to which the Road provided access.

In late 2016, the Nemeths contracted to sell the real property, but they could not close the sale until they ensured they had a right-of-way to access the property via the Road. The National Forest Service refused to recognize a right existed because the Road had never been determined to be a right-of-way pursuant to R.S. 2477. As a result, on September 22, 2016, the Nemeths petitioned the highway district commissioners of Shoshone County for public right-of-way

2

validation of the Road pursuant to Idaho Code section 40-204A. The Nemeths noted in their petition that they would pay a reasonable fee to cover the cost of the validation proceedings, as required by Idaho Code section 40-203A.

After nearly eight months, on May 17, 2017, the Board of County Commissioners notified the Nemeths of its failure to act on their petition and informed them that they could "exercise any remedies available pursuant to Idaho Code, including but not limited to I.C. 40-208(7)." Idaho Code section 40-208(7) provides in pertinent part: "If the commissioners having jurisdiction over the highway system do not initiate a proceeding in response to such a petition within thirty (30) days, the person may seek a determination by quiet title or other available judicial means." The notification also referred the Nemeths to "prior litigation involving similar request(s) in *County of Shoshone of Idaho v. United States*, 912 F. Supp. 2d 912 (D. Idaho 2012)."

Consequently, on June 14, 2017, the Nemeths filed a Verified Petition for Judicial Review and Declaratory Relief in district court seeking to have the Road validated as an R.S. 2477 public right-of-way. On August 22, 2017, Shoshone County filed a Rule 12(b)(6) motion to dismiss the Nemeths' petition on the bases that (1) there was no final action for the district court to review under a petition for judicial review, (2) the federal QTA is the only means available to validate the Road, and (3) the petition for judicial review was improperly combined with the declaratory relief action. On January 2, 2018, the Nemeths filed a motion for summary judgment.

The Court heard the motions on January 29, 2018. At the conclusion of the hearing, the district court granted the County's motion to dismiss the petition for judicial review because there was no county action to review.[1] It also dismissed the petition for a declaratory judgment on the bases that it did not have "authority to enter a declaratory judgment where Federal courts have jurisdiction and it is the county . . . that has the initial responsibility and duty to determine the public validation question." Accordingly, the district court issued an Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Motion to Dismiss upon the bases stated on the record. The Nemeths immediately appealed, but because the district court had not yet entered a final judgment, the appeal was conditionally dismissed by this Court. The district court subsequently entered a final judgment dismissing the Nemeths' claims on July 25,

---

[1] Nemeths acknowledge that the portions of their Complaint requesting "judicial review" were improper and have not appealed that portion of the district court's ruling.

2018, and the Nemeths timely appealed the dismissal of their claims.

## II.    STANDARD OF REVIEW

"This Court exercises free review over jurisdictional issues, including 'whether dismissal for lack of jurisdiction was properly granted.' " *Paslay v. A&B Irr. Dist.*, 162 Idaho 866, 868, 406 P.3d 878, 880 (2017) (quoting *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017)). In addition, when reviewing a motion to dismiss pursuant to I.R.C.P. 12(b)(6), "we apply the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated." *Employers Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017) (quoting *Joki v. State*, 162 Idaho 5, 8, 394 P.3d 48, 51 (2017)).

## III.    ANALYSIS

**A.    The district court had subject matter jurisdiction to determine whether to issue a declaratory judgment validating the Road as an R.S. 2477 public right-of-way.**

The district court dismissed the Nemeths' case for lack of subject matter jurisdiction. On appeal, the Nemeths argue that pursuant to R.S. 2477 and Idaho Code sections 40-208(7), 40-203A, and 40-204A, counties and state courts have jurisdiction to validate a R.S. 2477 right-of-way over federal land, including the Road at issue. We agree. For the reasons explained below, we hold that (1) the QTA does not conflict with or supersede the provisions of R.S. 2477 and Idaho laws that allow for county validation of an R.S. 2477 right-of-way on federal land, and (2) Idaho Code section 40-208(7) permits a district court to validate an R.S. 2477 right-of-way through a declaratory judgment action.

**1.    A brief history of R.S. 2477 and its application in Idaho.**

In 1866, to promote the growth of the vast and largely undeveloped western territories of the United States following the Civil War, Congress passed an open-ended grant of a "right of way for the construction of highways over public lands, not reserved for public uses." This grant, commonly referred to as "R.S. 2477," permitted most of the transportation routes across the western United States to be built. *Southern Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 740–42 (10th Cir. 2005), *as amended on denial of reh'g* (Jan. 6, 2006) (quoting Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976 (FLPMA), Pub.L. No. 94–579 § 706(a), 90 Stat. 2743). The U.S. Supreme Court has addressed the congressional intent behind R.S. 2477 and concluded

4

that "[t]hese roads, in the fullest sense of the words, were necessary aids to the development and disposition of the public lands." *Cent. Pac. Ry. Co. v. Alameda Cty., Cal.*, 284 U.S. 463, 473 (1932). R.S. 2477 remained in effect for 110 years, until congressional policy no longer embraced development of unreserved public lands. *Id.*

In 1976, congressional policy over public land management shifted towards conservation and preservation, and Congress repealed R.S. 2477 with the adoption of the Federal Land Policy Management Act of 1976 (FLPMA), 43 U.S.C. § 1701 *et seq. Id.* Consequently, no new R.S. 2477 rights of way could be established; however, any prior, valid right-of-ways existing on the date of FLPMA's enactment—October 21, 1976—would continue in effect. *Id.* Leaving rights in existence which were created prior to the enactment date effectively "grandfathered" such claims, expressly protecting and preserving existing rights granted under R.S. 2477 by Congress. 43 U.S.C. § 1769(a) ("Nothing in this title shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted ...."). As a result, as the Utah Supreme Court aptly observed, "R.S. 2477 is no longer in the books. … Yet R.S. 2477 still rules us from the grave." *Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 26, 424 P.3d 72, 77 (2017).

Courts across the West have since grappled with the establishment of R.S. 2477 right-of-ways and the Act's corresponding lack of administrative formalities. *See, e.g., Southern Utah Wilderness All.*, 425 F.3d at 740–42; *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1165-66 (10th Cir. 2011). Indeed, it has been noted that:

> Unlike any other federal land statute of which we are aware, the establishment of R.S. 2477 rights of way required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested.

*Southern Utah Wilderness All.*, 425 F.3d at 741. Since 2000, this Court has visited R.S. 2477 four times, and has recognized that "R.S. 2477 was a standing offer by the federal government to grant rights-of-way on public land to the states and that it can be an independent vehicle for creating a public road," created either through a positive act of acceptance by the local government or compliance with the road creation statutes in existence at the time. *Galli v. Idaho Cnty.*, 146 Idaho 155, 159, 191 P.3d 233, 237 (2008). *See also Flying A Ranch, Inc. v. Cty. Commissioners of Fremont Cty.*, 157 Idaho 937, 342 P.3d 649, 654 (2015); *Sopatyk v. Lemhi Cnty.*, 151 Idaho 809, 812, 264 P.3d 916, 919 (2011); and *Farrell v. Bd. of Comm'rs of Lemhi*

5

*Cnty.,* 138 Idaho 378, 384, 64 P.3d 304, 310 (2002), *overruled on different grounds by City of Osburn v. Randel,* 152 Idaho 906, 277 P.3d 353 (2012).

Whether an R.S. 2477 right-of-way has been established by compliance with road statutes in existence at the time is dependent upon state law pertaining to road creation. We have consistently held that "State law governs the manner in which a road on federal property becomes public under R.S. 2477." *Sopatyk*, 151 Idaho at 814, 264 P.3d at 921 (citing *Galli*, 146 Idaho at 160, 191 P.3d at 238)). Federal courts agree. *See, e.g., S. Utah Wilderness All. v. Bureau of Land Mgmt.,* 425 F.3d 735, 768 (10th Cir. 2005) ("[I]n determining what is required for acceptance of a right of way under the statute, federal law 'borrows' from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent.")

Historically, the Territorial Government of Idaho, and later the State of Idaho, acknowledged counties and their respective boards of commissioners as "the proper public authority for declaring roads." *See Sopatyk*, 151 Idaho at 814, 264 P.3d at 921. We have long recognized:

> [T]he state courts have concurrent jurisdiction in all matters wherein the jurisdiction of the federal courts is not made exclusive by the constitution or acts of Congress. . . . Unless the jurisdiction conferred by the constitution and laws of the United States upon the federal courts is made exclusive of the state courts, state courts retain jurisdiction of all actions wherein they are competent to take jurisdiction under their own laws.

*Mountain States Tel. & Tel. Co. v. Boise Redevelopment Agency*, 101 Idaho 30, 36, 607 P.2d 1084, 1090 (1980) (quoting *McCormick v. Smith*, 23 Idaho 487, 493–94, 130 P. 999, 1001 (1913) (citations omitted)).

**2. The QTA is not the exclusive means to validate an R.S. 2477 right-of-way on federal land.**

At issue in this case is whether the QTA has effectively stripped Idaho of the authority implicitly permitted under R.S. 2477 to validate a right-of-way over federal land. The County maintains that principles of federal exclusivity bar it—and the district court—from acting on the Nemeths' claim under state law. The County relies on language from the QTA, which states in part: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a).

6

We agree that where title to Federal land is disputed, including a dispute over ownership of a right-of-way, the QTA provides the designated method to adjudicate the controversy. However, "[f]or a title to be disputed for purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title." *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014). Where title is not disputed, the waiver of sovereign immunity provided by the QTA does not apply. *Id.* Accordingly, where the United States has not expressly disputed the existence of an R.S. 2477 right-of-way or taken an action that "implicitly disputes" the right-of-way, federal courts do not have jurisdiction to hear a claim against the United States under the QTA. *Id.* at 406. The QTA, however, does not preclude state courts from validating federal land rights-of-way under R.S. 2477 because the QTA only allows a federal court to conduct its own validation analysis where title is disputed. As a result, a party can assert a claim to an RS 2477 right-of-way pursuant to state law by filing a petition for validation pursuant to sections 40-204A and 40-203A of the Idaho Code. When a county fails to act on a validation petition, a state court has subject matter jurisdiction to determine whether R.S. 2477 rights-of-way exist in the first instance pursuant to Idaho Code section 40-208(7).

Here, the crux of the County's argument is that the federal government disputes title to the Road, and thus, the County has no power to validate it. Yet, the County explicitly chose not to provide any evidence supporting its claim. Instead, it has merely asserted in its briefing:

> The federal government takes the position that the road is <u>not</u> an R.S. 2477 road. Its reasons have been amply and repeatedly explained by the USFS to the Nemeths and the County. The Nemeths elected not to introduce the USFS's explanation into the record, presumably because it hurts their case on the merits. The County has not offered it either, because it is irrelevant to the jurisdictional question pressed by the County.

(Emphasis in original.) Therefore, the County's argument that a QTA action is the only way the Nemeths may assert their rights to use of the Road rests on the factual question of whether title is actually disputed. Accordingly, the County had the burden to establish that this is a disputed claim for purposes of its motion to dismiss. As this Court has repeatedly held: "we are restricted to the record before us and may not consider matters outside the record." *Taylor v. Taylor*, 163 Idaho 910, 920, 422 P.3d 1116, 1126 (2018), *as corrected* (July 31, 2018) (citation and brackets omitted). The U.S. Forest Service's alleged refusal to "recognize" the Road because it had not been determined to be an R.S. 2477 road could be reasonably explained as either a dispute, as the County contends, or predicated on the simple fact that no validation proceeding was ever

7

instituted, inasmuch as the County refused to conduct one. We cannot reasonably infer from the record on appeal that the right the Nemeths seek to establish is disputed when no evidence has been presented in support of that conclusion.[2] This was a tactical choice made by the County and they must live with it on appeal.

The County relies heavily on the 2012 federal district court case, *Cnty. of Shoshone,* 912 F. Supp. 2d 912 (D. Idaho 2012), for its assertions that only the federal government may validate the Road and that the Nemeths do not have standing under the QTA to request such validation. Given that it was a party to that case, the County's focus on the ruling is understandable. However, *County of Shoshone* is a federal district court ruling, and as such it is not binding authority on this Court. *Dan Wiebold Ford, Inc. v. Universal Computer Consulting Holding, Inc.*, 142 Idaho 235, 240, 127 P.3d 138, 143 (2005) ("[T]he decisions of lower federal courts are not binding on state courts, even on issues of federal law.) Nevertheless, we have carefully considered it for the persuasive weight it holds. A close reading discloses that *County of Shoshone* did not hold that county validation of a public right-of-way under Idaho Law is improper; rather, it merely stands for the proposition that where public use of a road is disputed in a federal court proceeding under the QTA, the court conducts its own analysis of whether an R.S. 2477 right-of-way has been properly established under Idaho law. *See id.,* 912 F. Supp. 2d at 943. On appeal, the Ninth Circuit Court of Appeals affirmed, citing both *Sopatyk* and *Galli* in support, and simply held that "the district court reasonably determined that *Idaho law's* application to the circumstantial evidence in this case did not compel recognition of Shoshone's claim." *Cnty. of Shoshone, Idaho v. United States*, 589 F. App'x 834, 837 (9th Cir. 2014) (emphasis added). In other words, it was the lack of evidence that the road in question qualified as an existing right-of-way under R.S. 2477 and state law—not the legality of the statutory procedures outlined in Title 40, Chapter 2 of the Idaho Code—that was fatal to the County's claim under the QTA.[3]

---

[2] Although the U.S. Forest Service's apparent position as to the road and right-of-way at issue has been freely discussed by both sides, it is largely based on anecdotal accounts from the attorneys amounting to mere hearsay. There is no evidentiary basis in the record to determine what, if anything, is actually disputed by the U.S. Forest Service.

[3] It is worth noting that the federal district court's decision in *County of Shoshone* relied heavily on the holding in *The Wilderness Soc'y v. Kane Cnty., Utah*, 581 F.3d 1198 (10th Cir. 2009) (hereinafter "*Kane County I*"). However, the ruling in *Kane I* was vacated and remanded on standing grounds a year earlier by an *en banc* ruling of the Tenth Circuit Court of Appeals in *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162 (10th Cir. 2011) (hereinafter "*Kane County II*"). In *County of Shoshone*, the district court erroneously cited *Kane I* for the proposition that "the Quiet Title Act is the sole avenue by which [Shoshone County] can seek to prove the existence of its R.S. 2477

Moreover, this case is factually distinguishable from *County of Shoshone*. In *County of Shoshone*, the historical record showed that businessmen built a direct road between Belknap and Eagle City between 1883 and 1884 to provide gold seekers access to new mining claims. *Cnty. of Shoshone*, 912 F. Supp. 2d at 916–17. The exact form and location of the road was disputed by the parties, with each side presenting different historical records, and the parties only agreeing that "it existed over some part of the Belknap Trail." *Id.* In addition, Eagle City's mining boom was quickly followed by its demise, shifting the center of mining activity to other gold fields, and consequently forcing other—more direct routes—to connect the railroads to different mining claims. *Id.* at 917. The records from the years following Eagle City's brief prosperity had "precious little mention of the original Belknap Trail," including a dearth of significant details needed to corroborate the regular, non-casual, and non-desultory use needed to establish an R.S. 2477 right-of-way, including information on the nature of the trail and its use. *Id.* at 927–35.

In contrast, the Nemeths' petition contains well over 200 pages of historical records purporting to establish the nature of the Road and its use since 1906, thereby presenting at least a colorable claim to an R.S. 2477 right of way. For example, their documentation shows eighteen maps, most created by the U.S. Forest Service, identifying the Road's location between 1929 and 2003, and noting the Road's conditions over the years. These conditions also signal the type of public use occurring on the Road, including: "a good motor road," "an improved road," "4-wheel drive road," and so on. Likewise, multiple reports identify the Road's original purpose as providing access to the various mines located in Granite Gulch and set forth the buildings and nature of the mining claims to which the Road provided access. Importantly, the record further establishes the County's own investment of $1,290 in the Road's development. By supporting their R.S. 2477 claim with records suggesting consistent use and recognition of the road by the County and other government entities, the Nemeth's case may not suffer from the same factual deficiencies present in *Shoshone County*.

### 3. Idaho law provides two avenues to validate R.S. 2477 rights-of-way.

---

rights in court." *Shoshone County*, 912 F. Supp. 2d at 943 (*citing Kane County I*, 581 F.3d at 1219). The quoted language from *Kane County I* references *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983), in support of its holding. This was incorrect, as the Tenth Circuit's *en banc* panel explained: "*Block* merely holds that the QTA is the exclusive means for an *adverse claimant* to challenge the government's title. [The QTA] does not, nor could it, purport to be the exclusive means of recognizing R.S. 2477 rights." *Kane County II*, 632 F.3d at 1173 (emphasis added).

The Idaho legislature has promulgated two methods for validating R.S. 2477 rights-of way in this state. First, pursuant to Idaho Code section 40-204A(5): "Any member of the public" may seek validation of rights to use granted rights-of-way "through a process set forth by the state of Idaho . . . or by proclamation of user rights granted under the provisions of the original act, Revised Statute 2477." Section 40-204A(5) further provides that "[p]ersons seeking to have a federal land right-of-way, including those which furnish public access to state and federal public lands and waters, validated as a highway or public right-of-way as part of a county or highway official highway system, shall follow the procedure outlined in section 40-203A, Idaho Code." That statute also clarifies that validation does not affect federal title when rights-of-way exist on federal land: "Neither the granting of the original right-of-way nor any provision in this or any other state act shall be construed as a relinquishment of either federal ownership or management of the surface estate of the property over which the right-of way passes." I.C. § 40-204A(5). Idaho Code section 40-203A(1), in turn, provides:

> Any resident or property holder within a county or highway district system, including the state of Idaho or any of its subdivisions, or any agency of the federal government, may petition the board of county or highway district commissioners, whichever shall have jurisdiction of the highway system, to initiate public proceedings to validate a highway or public right-of way, including those which furnish public access to state and federal public lands and waters, provided that the petitioner shall pay a reasonable fee as determined by the commissioners to cover the cost of the proceedings.

Thus, sections 40-204A and 40-203A provide a mechanism for the public to seek validation of federal land rights-of-way established prior to 1976 pursuant to R.S. 2477. In the case at bar, the Nemeths acted in accordance with sections 40-204A, 40-203A, and 40-208(7) when they initially petitioned Shoshone County to validate the Road.

The second method of obtaining validation is set forth in Idaho Code section 40-208(7). This section initially requires that "[a]ny person other than a board of county or highway district commissioners seeking a determination of the legal status . . . of a highway or public right-of-way shall first petition for the initiation of validation . . . as provided for in sections 40-203(1)(b) and 40-203A(1), Idaho Code." The statute further provides that "[i]f the commissioners having jurisdiction over the highway system do not initiate a proceeding in response to such a petition within thirty (30) days, the person may seek a determination by quiet title or *other available judicial means*." I.C § 40-208(7) (emphasis added). In the case at bar, it was only the County's refusal to initiate a validation proceeding that resulted in the

10

Nemeths utilizing the second method by bringing their claim to the district court pursuant to sections 40-204A and 40-208(7) of the Idaho Code. In fact, this is consistent with the County's own advice to the Nemeths contained in its notification letter.

As we have previously explained, the Legislature adopted these statutes in recognition of the importance that existing federal land right-of-ways held to all of Idaho's citizens. *Sopatyk.*, 151 Idaho at 816–17, 264 P.3d at 923–24. With two-thirds of Idaho's land under federal control, "access to such federal lands is integral to public use." *Id.* (quoting Act of Mar. 25, 1993, ch. 142, § 1, 1993 Idaho Sess. Laws 375, 376 (creating I.C. § 40–204A, governing creation of public thoroughfares under R.S. 2477)). Such reasoning is no less applicable today.

Notably, none of the Idaho statutes relating to validation of R.S. 2477 rights-of-way distinguish between rights-of-way on private land or federal land, and accordingly, do not appear to preclude validation of rights-of-way that currently traverse federal land, even where title is allegedly disputed. Indeed, this Court has expressly approved of validation of rights-of-way that exist on federal land without considering whether title could be disputed. *See Sopatyk*, 151 Idaho at 817, 264 P.3d at 924. In *Sopatyk*, the plaintiff argued that the county lacked authority to validate a R.S. 2477 road "because in some places it drifts onto land owned by the U.S. Forest Service." *Id.* The Court rejected that argument, stating:

> As described above, however, R.S. 2477 expressly permitted states to establish rights-of-way on federal land so long as the property is in the public domain. *Galli*, 146 Idaho at 159, 191 P.3d at 237. ACR became a public road by legislative declaration. . . . ACR was therefore a public road before the underlying land became ineligible for such development. Further, the Board did not create new public rights when it validated ACR in 2005, as validation proceedings merely confirm preexisting public rights in state roads. *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 579, 6 P.3d 826, 829 (2000) (citing I.C. § 40–203A). It was therefore within the County's legal authority to validate ACR even if it does invade National Forest land.

*Id.*

Given the similar arguments presented by the County in this case, we find its attempts to distinguish *Sopatyk* unpersuasive. Additionally, at oral argument, counsel for the County argued that the language in Idaho Code section 40-204A referencing federal lands was "mere surplusage." However, no rule of statutory construction would support the view that the statute's multiple references to "federal lands" and even "R.S. 2477" were inadvertent or unnecessary.

11

The record is clear that the legislature expressly provided a mechanism to permit the Nemeths to do exactly what they seek to do in this case.

### 4. A declaratory judgment action is an appropriate mechanism to validate an R.S. 2477 right-of-way when a county fails to act on a validation petition.

Contrary to the Nemeths' and the district court's contention, the County was not required to initiate validation proceedings. This is evidenced by the fact that section 40-208(7) provides a judicial remedy when a county fails to initiate validation proceedings after a petition is filed: "[a petitioner] may seek a determination by quiet title *or other available judicial means*." (Emphasis added). Therefore, while the County was not required to initiate validation proceedings in this case, the Nemeths were not left without recourse when the County failed to do so. This same statutory language—that a petitioner "may seek a determination by quiet title or other available judicial means"—establishes that other validation avenues are open to petitioners. While the statute does not specify the types of "other available judicial means," at the very least, it is clear from section 40-208(7) that a federal quiet title action under the QTA is not the only available judicial remedy to plaintiffs in the Nemeths' situation.

A declaratory judgment action, like the Nemeths have sought here, is an appropriate mechanism for validation of R.S. 2477 rights-of-way when a County has failed to act. The statute concerning declaratory judgment relief provides that, "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." I.C. § 10-1201. Regarding the declaratory judgment relief, we have recently noted:

> This Court has long held that "the question[ed] 'right' or 'status' may invoke either remedial or preventive relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered . . . ." *State ex rel. Miller v. State Bd. of Educ.*, 56 Idaho 210, 217, 52 P.2d 141, 144 (1935).

*Paslay v. A&B Irr. Dist.*, 162 Idaho 866, 869, 406 P.3d 878, 881 (2017). This Court has also said:

> [E]ven if the court has the authority to issue a declaratory judgment, the plaintiff is also required to show he has standing. "[T]o invoke the trial court's jurisdiction in a declaratory judgment action, the plaintiffs must allege a 'personal stake' in the outcome of the controversy, which 'has come to be understood to require not only a "distinct palpable injury" to the plaintiff, but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct.' " *Idaho Branch Inc. of Associated Gen. Contractors of*

12

> *Am., Inc. v. Nampa Highway Dist. No. 1*, 123 Idaho 237, 242, 846 P.2d 239, 244
> (1993).

*Zingiber Inv., LLC v. Hagerman Highway Dist.*, 150 Idaho 675, 685, 249 P.3d 868, 878 (2011), *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012). "Generally, in determining whether to grant a declaratory judgment, the criteria is whether it will clarify and settle the legal relations at issue, and whether such declaration will afford a leave from uncertainty and controversy giving rise to the proceeding." *Schneider v. Howe*, 142 Idaho 767, 773, 133 P.3d 1232, 1238 (2006) (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 643, 778 P.2d 757, 765 (1989)). The Nemeths have standing to request a declaratory judgment because they have a personal stake in having the Road validated, as it provides access to the property they are trying to sell. A declaratory judgment is appropriate because it will clarify the legal relations at issue and will "afford a leave" from the controversy giving rise to the proceeding.

Idaho case law supports the use of a declaratory judgment action to seek relief under the very statutes at play in this case. In *Halvorson v. North Latah County Highway District*, this Court addressed whether a district court may validate a road pursuant to Idaho Code section 40-203A. 151 Idaho 196, 203, 254 P.3d 497, 504 (2011). The plaintiffs argued that "it is *only* through a validation proceeding initiated by an affected land-owner that the public nature of [the road] can be determined and that courts may not make such a determination." *Id.* The Court explained that, "[o]rdinarily, a validation proceeding as described in I.C. § 40–203A is the appropriate method to 'validate an existing highway or public right-of-way about which there is some kind of doubt . . . .' " *Id.* (quoting *Galvin*, 134 Idaho at 579, 6 P.3d at 829). "However, there is nothing within I.C. § 40–203A that precludes a finding by a court determining that [a road] is a public highway when a cause of action implicates that question." *Id.* As a result, the Court concluded that "no validation proceeding was necessary in order for the district court to conclude that [the road] was a public highway." *Id.* Similarly, in a case involving a public roadway easement over a county right-of way, the Court affirmed a district court's declaratory judgment clarifying that the plaintiff had a right to use the easement because "[a] declaration regarding the existence of an easement will afford both [parties] relief from uncertainty and controversy in the future." *Schneider*, 142 Idaho at 773, 133 P.3d at 1238.

**B.      Neither party is entitled to attorney fees on appeal.**

Both parties have requested attorney fees under Idaho Code section 12-117 on the basis that the other supported their position on appeal without a foundation in fact or law. Additionally, the County requests attorney fees under Idaho Code section 12-121, arguing that the Nemeths pursued this appeal frivolously. However, fees under section 12-121 cannot be awarded to either side because section 12–117 "is the exclusive means for awarding attorney fees for the entities to which it applies." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 635, 226 P.3d 1277, 1282 (2010). Moreover, a party must prevail to be entitled to attorney fees, so the County is not eligible for attorney fees under either section.

Although the Nemeths prevailed on appeal, we cannot find that the County acted without a foundation in fact or law in defending on appeal the judgment they won below. Additionally, this case clarified important questions regarding whether a district court can validate an R.S. 2477 road in a declaratory judgment action. Therefore, we decline to award attorney fees to either party.

## IV.    CONCLUSION

We reverse the district court's dismissal of the Nemeths' claim and remand the matter for a determination of whether the Road qualifies as an R.S. 2477 right-of-way pursuant to Idaho Code section 40-208(7). As prevailing parties, Nemeths are entitled to an award of costs.


Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

14