# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48290

|  |  |  |
|---|---|---|
| DENNIS FLORER, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, June 2021 Term |
| | ) | |
| v. | ) | Opinion Filed: June 25, 2021 |
| | ) | |
| YAR WALIZADA, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Susan E. Wiebe, District Judge.

The denial of the motion to dismiss is <u>reversed</u>, the judgment awarding damages to Florer is <u>vacated</u>, and the case is <u>remanded</u> with instructions to enter judgment in favor of Walizada on the breach of the warranty of habitability claim.

The Law Office of Michael Moscrip, PLLC, Fruitland, for appellant. Michael Moscrip argued.

Dennis Florer, Mountain Home, respondent pro se argued.

_____

BRODY, Justice.

This appeal involves the written notice requirement to enforce the warranty of habitability under Idaho Code section 6-320. Dennis Florer, a tenant, brought an action against Yar Walizada, his landlord, for breach of the warranty of habitability based on an alleged failure to provide an adequate heat source. Walizada filed a motion to dismiss, asserting that Florer lacked standing to bring the action because, by the time Florer provided written notice under section 6-320, the alleged breach had already been cured. The district court denied the motion and, following a bench trial, entered judgment in Florer's favor. Walizada appeals, arguing the district court erred in denying his motion to dismiss. For the reasons below, we agree.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual background.

Though certain facts were vigorously disputed at trial, the issue on appeal is a question of law and neither party has challenged the factual determinations made by the district court. Those facts are as follows.

On March 3, 2019, Walizada rented a home in New Plymouth to Florer. Each party signed a form lease agreement purporting to set out the terms of their agreement. A zero was entered on the form's blank for the monthly amount of rent due, however Florer paid Walizada $500 rent every month from March to December of 2019, with the exception of October and November as noted below.

When Florer moved in, the home had a freestanding, plug-in radiator, but no fixed heat source. Near the time Florer entered the lease, he told Walizada that the radiator was inadequate to heat the home. Florer verbally requested that Walizada remedy the issue multiple times in March and April 2019. Walizada told Florer that he did not need heat because summer was coming, but he delivered a wood-burning stove to the yard outside the house in May. However, Walizada did not install the stove, despite requests from Florer to do so between May and October.

On October 1, 2019, Florer told Walizada he was going to withhold rent unless Walizada installed the stove. Walizada then agreed to do so. The following weekend, Florer and Walizada went to a hardware store to buy materials to install the stove, but were unable to find an elbow for the stovepipe. Walizada then told Florer: "You find it. Fix it. Pay with the rent." Florer found a stovepipe elbow at a different store later that day, and he purchased the elbow along with other materials necessary for the installation. Florer then installed the stove, spending a little more than $800 on materials.

Florer did not pay rent in October and November 2019, and a dispute arose between the parties because Walizada believed he could have installed the stove for less money than Florer spent. Walizada then told Florer he would have to "pay for everything" or he would evict Florer.

On December 4, 2019, Walizada served Florer a 30-day notice to vacate, citing failure to pay rent for October and November, failure to pay the October water bill, failure to maintain the yard, and "unauthorized charges" (apparently against the rent) for stove materials and some unrelated items.

On December 5, 2019, Florer served Walizada a document titled "Notice Pursuant to Idaho Code Title 6[,] Ch. Three[.]" The document alleged that Walizada failed to provide heat from the beginning of the lease "to current"; that the parties had agreed Florer would install the stove and deduct the cost from his rent; that Walizada reneged on this agreement; and that Walizada served an eviction notice to Florer. Further, it demanded "specific performance for repairs to the interior floor, exterior chimney, and [to] remedy the cold air coming in from outside." The notice then asserted "[i]f the aforesaid matters are not resolved, Tennant [sic] will [bring] an action for damages for retaliatory eviction, wrongful termination of [the] lease, specific performance, and filing fees, summons fees, copies, and other applicable costs." The document did not demand that Walizada provide an adequate heat source.

On December 6, 2019, Walizada served Florer a second 30-day notice to vacate, citing the need to repair the floor in the house.

## B. Procedural history.

In January 2020, Florer filed an action pursuant to Idaho Code section 6-320, alleging Walizada had breached the warranty of habitability by failing to provide a heat source. Though Florer asserted it was an "action for damages and specific performance," he did not seek any specific performance as relief. Instead, Florer sought $12,000 as "[t]reble damages of $500 per month for eight months without a heat source," as well as "relocation expenses," "punitive damages," costs, the appointment of an expert to testify at trial about the relative expense of various heat sources, and an order preventing Walizada from evicting him.

Walizada responded with a motion to dismiss. Walizada argued that before a tenant has standing to file an action under section 6-320, he must give three-day written notice to his landlord. However, Florer's complaint indicated he had installed the wood stove in October and he did not provide written notice until two months later. Thus, Walizada argued he "could not repair or cure a deficiency that does not exist." As to the other issues with the house raised in Florer's notice, Walizada noted that Florer did not mention these alleged breaches of the warranty of habitability in his complaint. Thus, Walizada argued Florer's complaint must be dismissed under Idaho Rule of Civil Procedure 12(b)(6) for failure to state a claim.

A few days later, Walizada filed an eviction action against Florer in magistrate court, alleging that Florer had failed to relinquish the property pursuant to the December 4 and December 6 notices to vacate.

3

On January 30, 2020, the district court held a hearing on the motion to dismiss. The court orally denied the motion, finding Florer's notice was adequate:

> [Section] 6-320 requires that the tenant give a three-day notice specifying repairs in order to have standing. That has been done. That is Exhibit H of the complaint. That just gets him in the door. He did a three-day notice before he filed [a complaint], so I find that he does have standing.

Thereafter, Walizada moved to consolidate the unlawful detainer action with Florer's warranty of habitability case, and the district court granted the motion.

Trial was held in August 2020. Before trial began, Walizada orally renewed his motion to dismiss. The district court again denied the motion. After testimony and argument from Walizada and Florer, the district court ruled that (1) the parties failed to form a contract with the written lease agreement because of a lack of consideration; (2) nevertheless, the conduct of the parties established an implied-in-fact contract for a month-to-month tenancy with $500 rent due per month; and (3) Walizada had breached the warranty of habitability by failing to provide an adequate heat source. Further, the district court held that Florer had proven the December notices to vacate were due to his assertion of rights under the warranty of habitability and, therefore, he established retaliatory eviction as a defense to the unlawful detainer action.

The district court entered judgment dismissing the unlawful detainer action and ordering Walizada to pay $4,833.22 in damages for breach of the warranty of habitability, reflecting eight months' rent and Florer's out-of-pocket costs for installing the stove. Walizada timely appealed the district court's decision denying his motion to dismiss Florer's claim for breach of the warranty of habitability.

## II. STANDARD OF REVIEW

"This Court exercises free review over statutory interpretation because it presents a question of law." *State v. Amstad*, 164 Idaho 403, 405, 431 P.3d 238, 240 (2018). "Interpretation of a statute 'must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.' " *Id.* (quoting *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)).

## III. ANALYSIS

### A. The district court erred in denying Walizada's motion to dismiss.

4

Walizada argues that the district court erred in denying his motion to dismiss because Florer did not comply with the requirements of Idaho Code section 6-320. Specifically, Walizada argues that a landlord must be allowed three days after receipt of written notice to cure a habitability breach before suit can be filed. Because the breach alleged by Florer was remedied before Florer provided written notice, Walizada maintains he was deprived of the statutory opportunity to cure. Florer argues that the district court did not err because Walizada did not present "any evidence that the landlord himself or his agent/employee cured the repairs."

Idaho Code section 6-320 is the statutory codification of the implied warranty of habitability in Idaho. It provides:

> A tenant may file an action against a landlord for damages and specific performance for:
>
> . . . .
>
> > (2) Failure to maintain in good working order electrical, plumbing, heating, ventilating, cooling, or sanitary facilities supplied by the landlord;
> >
> > (3) Maintaining the premises in a manner hazardous to the health or safety of the tenant . . .

I.C. § 6-320(a). However, it also provides that a tenant must provide a landlord with notice before bringing suit:

> Before a tenant shall have standing to file an action under this section, he must give his landlord three (3) days written notice, listing each failure or breach upon which his action will be premised and written demand requiring performance or cure. If, within three (3) days after service of the notice, any listed failure or breach has not been performed or cured by the landlord, the tenant may proceed to commence an action for damages and specific performance.

I.C. § 6-320(d). Notably, landlords are strictly liable for uncured breaches under the statute, so long as tenants comply with the notice requirement. *Jesse v. Lindsley*, 149 Idaho 70, 74, 233 P.3d 1, 5 (2008) (citing *Silver Creek Computers v. Petra, Inc.*, 136 Idaho 879, 883, 42 P.3d 672, 676 (2002)). Further, Idaho Code section 6-317 provides that if damages are awarded under section 6-320, they may be trebled at the discretion of the trial court. I.C. § 6-317.

Here, the district court erred in denying Walizada's motion to dismiss because Florer failed to provide a complying notice. Section 6-320 requires the tenant to provide a "written demand *requiring performance or cure*." I.C. § 6-320(d) (emphasis added). Yet Florer's notice did not demand performance or cure because the stove had already been installed. Further, as

5

Walizada's motion to dismiss argued, this fact was clear from the face of the complaint. Therefore, the district court erred in denying Walizada's motion to dismiss.

That said, Florer's argument to the contrary—that he was entitled to sue because *he*, not Walizada, installed the stove—is not wholly unreasonable. Section 6-320 allows the recovery of damages "if any listed failure or breach has not been performed or cured *by the landlord*[.]" I.C. § 6-320(d) (emphasis added). Nevertheless, this argument ignores that there must be a complying notice before a landlord's failure to cure triggers the right to sue. Here, Florer's notice did not comply with section 6-320 because it did not (and could not) demand Walizada cure a breach that had already been cured.

A hypothetical example illustrates the flaw in Florer's position. Imagine that a landlord plans to replace a furnace in a house he leases to a tenant because the furnace is old and inefficient. The landlord already has a new furnace on hand, but, for the convenience of the tenant, has decided to wait for summer to install it. Further, imagine that the furnace breaks mid-winter, and without notice to the landlord, the tenant purchases and installs an expensive replacement part. Under Florer's interpretation, the landlord would be strictly liable to the tenant for the cost of the replacement part (and potentially subject to treble damages), even though he would rather have replaced the furnace instead of repairing it and he did not know about the repair until it was complete.

Clearly, the equities in this case are not the same as in the above example. Walizada rented a house without an adequate heat source to Florer; he had an obligation to provide an adequate heat source; he induced Florer to install the stove by promising to offset Florer's costs against his rent; and he reneged on this promise. However, it is not necessary to adopt Florer's interpretation of section 6-320 for Florer to have had a remedy in this case. Instead, Florer could have sued for breach of the oral agreement to offset the costs of installation against his rent. Given the result below, it appears he would have been successful if he had. However, Florer brought suit under section 6-320 instead. Because this suit was not preceded by a written notice allowing three days to cure, the district court's failure to grant Walizada's motion to dismiss contradicted the plain language of section 6-320; therefore, we must reverse its decision. *See Verska*, 151 Idaho at 893, 265 P.3d at 506.

### B. Walizada is not entitled to attorney fees on appeal.

Walizada argues he is entitled to attorney fees under Idaho Code section 12-121 because "Florer has frivolously pursued and defended this civil action without foundation." This Court awards attorney fees under section 12-121, only where we are "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Secol v. Fall River Med., P.L.L.C.*, 168 Idaho 339, ___, 483 P.3d 396, 415 (2021) (quoting *Chavez v. Barrus*, 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008)). Here, Florer's arguments on appeal closely echo his successful arguments below. It is not frivolous or unreasonable to defend a favorable judgment on appeal by continuing arguments that obtained the judgment in the first instance. *See Nemeth v. Shoshone Cnty.*, 165 Idaho 851, 861, 453 P.3d 844, 854 (2019) ("[W]e cannot find that the [respondent] acted without a foundation in fact or law in defending on appeal the judgment they won below."). Further, though we hold Florer's argument is unavailing, it was tethered to the statutory text and we do not find that it was so without foundation as to warrant an award of attorney fees. Thus, we do not award attorney fees to Walizada on appeal.

## IV. CONCLUSION

For the reasons above, the denial of Walizada's motion to dismiss Florer's claim under Idaho Code 6-320 is reversed, the judgment awarding Florer damages is vacated, and the case is remanded with instructions to enter judgment in favor or Walizada on the breach of the warranty of habitability claim. We award costs on appeal to Walizada pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices STEGNER and MOELLER, and Justice Pro Tem SCHROEDER CONCUR.

7