# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47978

DENNIS L. MUNDEN and SHERRILYN L. MUNDEN, husband and wife; COYOTE CREEK RANCH, LLC, a Utah limited liability company,

    Plaintiffs-Appellants,

v.

BANNOCK COUNTY, a political subdivision of the State of Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2021 Term

Opinion Filed: February 9, 2022

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED DECEMBER 15, 2021 IS WITHDRAWN

---

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The judgment of the district court is vacated, and the case is remanded. The decisions of the district court are affirmed in part and vacated in part.

Petersen Moss Hall & Olsen, Idaho Falls, for appellants Dennis & Sherrilyn Munden and Coyote Creek Ranch, LLC. Nathan M. Olsen argued.

Hall Angell & Associates, LLP, Idaho Falls, for respondent, Bannock County. Blake G. Hall argued.

---

STEGNER, Justice.

This case involves the status of a purported public road in Bannock County. The dispute turns primarily on whether Idaho Code section 40-208(7) applies to that contested road. Dennis and Sherrilyn Munden (the Mundens) and their limited liability company, Coyote Creek Ranch, LLC, purchased property in Bannock County in 2012 (the Upper Property), and acquired adjoining property (the Lower Property) in 2014. The Mundens' ranch is accessible by a gravel road (the Road) which leaves a paved public road before crossing the Lower Property. It then traverses a neighbor's parcel, and then the Upper Property, before exiting to the north.

The Mundens began ranching on the Lower Property in 2013 and started construction of a barn and living quarters on the Upper Property in 2015 after obtaining a three-year building permit.

1

In 2017, the Mundens were informed by the Bannock County Commissioners that, pursuant to a 2006 county ordinance, the Road had been designated by the Commissioners for "snowmobile use only" between December 15 and April 15. All other vehicular use was prohibited during this timeframe. In January 2019, Bannock County passed an ordinance which gave discretion to the Bannock County Public Works Director (the Director) to determine when snowmobile trails would be closed to all but snowmobile use. Subsequently, the Director decided to close the Road for the 2018–19 winter season. The Mundens filed a complaint in district court against Bannock County, bringing several claims involving the Road, and obtained an ex parte temporary restraining order (TRO) to prohibit enforcement of the 2019 ordinance.

The County subsequently moved to dissolve the TRO, which the district court granted. The district court then awarded attorney fees to the County. The Mundens amended their complaint to add their ranching operation, Coyote Creek Ranch, LLC, as a plaintiff, to which the County responded with an answer and counterclaim. The County alleged that the Road was a public right-of-way with no winter maintenance that had been designated as a snowmobile trail by the 2006 ordinance. The County moved to dismiss the amended complaint for failure to state a claim. The district court granted this motion, concluding that because the claims turned on a legal determination of the Road's status, the Mundens were required by Idaho Code section 40-208(7) to first petition for validation or abandonment proceedings with the Board of County Commissioners before they could bring a lawsuit. The district court accordingly entered a judgment dismissing the plaintiffs' amended complaint in its entirety.

The Mundens filed several motions, including the following: an unsuccessful motion to reconsider with declarations (which were subsequently stricken); a motion to correct the judgment (IRCP 60); a motion for certification of the judgment as final (IRCP 54(b)(1), which was ultimately granted); and a motion to disallow the attorney fees the district court had awarded against them. Two notices of appeal to this Court were filed, but each was dismissed by this Court for lack of a reviewable final judgment. Ultimately, the district court entered a judgment certified under IRCP 54(b)(1) authorizing an immediate appeal, and the Mundens timely appealed. For the reasons discussed, we affirm in part and vacate in part the decisions of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Dennis and Sherrilyn Munden[1] purchased the Upper Property, consisting of approximately 768 acres of land in Bannock County in January 2012. In 2013, they purchased an adjoining three-acre corner piece. In August 2014, they purchased the Lower Property, which contained an additional 660 acres situated nearby. In total, the Mundens own approximately 1431 acres of agricultural land.

The Mundens' properties are accessible by the Road, which is a gravel road that leaves a paved public road (West Arimo Road), crosses the Lower Property and a neighbor's property, then enters the Upper Property before continuing onto a ranch to the north. The Road provides access to several additional properties, including property to the north owned by Dan Williams (Williams). According to Sherrilyn, when the Mundens took possession of the property, they were advised by the County that the Road was not maintained or plowed by the County in the winter, and that it would be their responsibility upon taking ownership.

The Road, and its status, is the subject of dispute in this case. Even the Road's name is in dispute; the Mundens refer to the Road as "South Garden Creek Road," while the County refers to the Road as simply "Garden Creek Road." The Mundens now contend that the Road is a private agricultural road, and the County asserts that the Road is a public right-of-way not subject to winter maintenance.

The Mundens' ranching operation, Coyote Creek Ranch, LLC (Coyote Creek), is a limited liability company incorporated in Utah and registered in Idaho. In 2013, Coyote Creek began a calving operation on the Mundens' Lower property and started developing it, including building corrals in 2014 and constructing "miles of fence line." The Mundens sought to build a large barn and living quarters on the Upper Property to enable year-round ranching operations and, in August 2015, they obtained a three-year building permit from the County. According to Sherrilyn, the Mundens were again advised by the County that the County did not maintain the Road during the winter.

An early winter storm in September 2016 limited the Mundens' contractor's access to the Upper Property. According to Sherrilyn, Dennis requested that the County plow the Road to resolve this access issue. The County plowed one side of the Road until January 2017, when

---

[1] The Mundens will be referred to by their first names "Sherrilyn" and "Dennis" when necessary.

3

Williams, the Mundens' northern neighbor, protested, alleging that plowing the Road made snowmobile travel over it impossible.

In December 2017, the Mundens received a letter from a County Commissioner stating that a 2006 county ordinance designated the Road for snowmobile use only between December 15 and April 15, with all other vehicular use being prohibited during that time. Thereafter, the Mundens accessed the Property with a tractor during the 2017-18 winter season.

In November 2018, a public meeting was held before the County Commissioners concerning a proposed ordinance that would affect the Road. Several members of the public, including Sherrilyn, provided testimony about maintenance and snowmobile use on the Road. During the winter of 2018-19, the Mundens continued to use their tractor to access the Upper Property.

On January 8, 2019, the County passed Ordinance 2019-1 which amended the 2006 ordinance, changing the time during which certain snowmobile trails would be open. Instead of requiring closure beginning December 15 and ending April 15, the amended ordinance granted the Bannock County Public Works Director the discretion to determine when snowmobile trails would be closed based on weather conditions.

According to Sherrilyn, on January 9, 2019, the Road was groomed and altered, leaving snow berms at the beginning of the Road, making it impassable by anything other than a snowmobile. A ranch hand employed by the Mundens was prevented from leaving the Upper Property as a result of the County's actions. The Mundens removed part of the berm with a plow so that the ranch hand could leave the Property, and transported feed by tractor to various livestock. The Mundens notified the Bannock County Sheriff's Office that they had done so and were informed by a deputy that they would not be cited for their action. According to the County, the Mundens continued to use vehicles on the Road, including a tracked bulldozer in an attempt to plow the Road. This created ruts in the Road that necessitated repair.

## B. Procedural History

On January 17, 2019, the Mundens filed a complaint against Bannock County, which included four claims: (1) a claim for declaratory relief establishing their property rights to the Road and invalidating the 2019 ordinance; (2) a claim for a preliminary injunction to keep the County from enforcing the 2019 ordinance; (3) an "inverse condemnation/takings" claim in the event the Road was found to be public; and (4) an "intentional tort" claim on the basis that the Mundens had

4

suffered harm as a result of the County's "malice and bad intent." The complaint was accompanied by a declaration from Sherrilyn describing the potential harm to the Mundens' livestock that could result if Ordinance 2019-1 remained in effect. Sherrilyn stated the lack of access to the Road would prevent the Mundens from transporting feed to various livestock. She next asserted that if the Mundens could not access or maintain the Road, "our cattle, including cows, calves, and bulls, as well as our horses run the extreme risk of starvation or other maladies." Finally, she averred that without access to the Road, "the losses we will suffer to property and our business will be devastating." The Mundens later filed an amended complaint on March 6, 2019.

On January 24, 2019, the district court entered a TRO.[2] The TRO enjoined the County from impeding or restricting the Mundens' access to the Upper Property via the Road. The TRO also required the Mundens to post a bond of $7,500.00. On January 31, 2019, the County moved to dissolve the TRO. Following an evidentiary hearing, the district court granted the motion to dissolve the TRO. The County then sought attorney fees related to the TRO, asserting that fees were appropriate at this juncture because the district court had determined that the TRO had been wrongfully entered. On July 2, 2019, the district court granted the County's motion for fees by entering a "Judgment" that awarded the County fees and costs totaling $15,085.64.

The County next filed a Rule 12(b)(6) motion to dismiss the Mundens' amended complaint, alleging that they had failed to state a claim upon which relief could be granted. The County contended that because the Mundens did not petition the County to initiate proceedings regarding the Road's legal status pursuant to Idaho Code section 40-208(7) before seeking judicial relief, the district court did not have jurisdiction over the matter. The Mundens opposed the motion. The district court granted the County's motion, holding that the Mundens had failed to follow the procedures set forth in Idaho Code section 40-208(7). The district court entered another "Judgment" on August 15, 2019, dismissing the Mundens' amended complaint. This judgment did not specify whether the complaint was dismissed with or without prejudice.

The district court next entered an "Amended Judgment" on August 20, 2019. It reads:

Judgment is entered against Plaintiffs and in favor of Defendant as follows:

1. On July 2, 2019, this [c]ourt issued an order granting attorney fees associated with Defendant's motion to dissolve the Temporary Restraining Order in this Case.

---

[2] Although the TRO references an "Ex Parte Motion for Emergency Relief Pendente Lite," no motion by that name is in the record. There is no transcript of the proceedings associated with entry of the emergency ex parte TRO.

> 2. Defendants are hereby awarded attorney fees against Plaintiff [sic] in the amount of $15,030.00 and costs as a matter of right in the amount of $55.64, for a TOTAL JUDGMENT against Plaintiff [sic] in the amount of $15,085.64.

Apparently accompanying this judgment was a Memorandum Decision and Order awarding the County attorney fees; however, this latter document was dated August 23, 2019.

The Mundens filed a Rule 60(a) motion to correct this judgment on August 21, 2019, seeking clarification that it was a "final judgment" for purposes of an appeal. The Mundens alleged that neither the August 15 nor the August 20 judgments were final for several reasons. The Mundens requested clarification on whether the August 15 judgment was a final judgment because it did not adjudicate all outstanding claims; specifically, the judgment did "not indicate whether [the County's] counterclaims have been dismissed." The judgment also failed to state whether the claims were dismissed with or without prejudice. The Mundens next asserted that the August 20 judgment, the "Amended Judgment," "contain[ed] a recital of prior pleadings and therefore does not appear to be a final and appealable judgment pursuant to IRCP 54(a)." Finally, the Mundens argued that the district court erred by awarding the County attorney fees in excess of the bond. The County responded, seemingly acknowledging that the district court's "Amended Judgment" was not a final judgment for purposes of IRCP 54. The district court never ruled on the Mundens' Rule 60(a) motion.

> The district court entered a "Second Amended Judgment" on November 13, 2019. It reads:
>
> JUDGMENT IS ENTERED AS FOLLOWS:
>
> The Plaintiffs' First Amended Complaint is dismissed with prejudice.
>
> The Defendant's Counterclaim for a Declaratory Judgment regarding the status of Garden Creek Road is dismissed without prejudice pending a determination of the legal nature of Garden Creek Road pursuant to Idaho Code § 40–208(7).
>
> The Amended Judgment dated August 20, 2019, granting costs and attorney fees associated with the Defendant's Motion to Dissolve the Temporary Restraining Order remains in full force and effect.

The Mundens appealed the November 13, 2019, Judgment. The County filed a motion to dismiss the appeal as untimely. This Court granted the County's motion and dismissed the Mundens' appeal as untimely. The County argued that by dismissing the appeal, "the Supreme Court showed that it considers the Second Amended Judgment entered by this Court to be a final judgment under Idaho Rule of Civil Procedure 54(a)."

6

The County filed an application for a writ of execution on the attorney fee award on January 29, 2020. The clerk issued the writ on January 30, 2020. On February 6, 2020, the Mundens filed an objection to the application for writ of execution, arguing that because there were several motions still pending, the County's application was premature.

The Mundens then filed (1) a renewed motion for correction of the judgment, (2) a renewed motion to vacate the existing judgments, and (3) a renewed motion to disallow the award of costs and fees to the County, all of which had been previously filed and not heard by the district court. The County objected to "all motions currently pending," arguing that the district court no longer had jurisdiction to hear them due to its dismissal of the Mundens' complaint. The Mundens argued that the "Second Amended Judgment" was not a final appealable judgment under Rule 54. They also sought a Rule 54(b) certification so they could pursue an appeal. The district court agreed with the County that it had issued a final appealable judgment and that it did not have jurisdiction to hear the Mundens' pending motions. The district court then directed the County to file an order for release of the bond and a memorandum of attorney fees and costs.

The district court entered an order releasing the $7,500 cash bond to the County. The district court also awarded the County its attorney fees and costs incurred after the TRO was dissolved.

After the Mundens moved for permission to appeal, this Court entered an "Order Denying Motion for Permissive Appeal and Order for District Court to Show Cause" on June 2, 2020. In that order, this Court determined that "no judgment entered by the district court . . . resolved the litigation between the Mundens and Bannock County." This Court then ordered the district court to show cause why

> (1) a Rule 54(b) certificate should not enter as to the Second Amended Judgment entered in this case on November 13, 2019 in the form required by Rule 54(b)(1); or (2) Bannock County Case No. CV03-19-00217 should not proceed to final judgment on the remaining claims in Bannock County's Counterclaim (the negligence claims and the remaining declaratory judgment claim).

Shortly thereafter, on June 8, 2020, the district court entered an "Amended Second Amended Judgment and IRCP 54(b)(1) Certification." It reads:

JUDGMENT IS ENTERED AS FOLLOWS:

The Plaintiffs' First Amended Complaint is dismissed with prejudice.

7

The Defendant's Counterclaim for a Declaratory Judgment regarding the status of Garden Creek Road is dismissed without prejudice pending a determination of the legal nature of Garden Creek Road pursuant to Idaho Code § 40-208(7).

The Amended Judgment dated August 20, 2019, granting costs and attorney fees associated with the Defendant's Motion to Dissolve the Temporary Restraining Order remains in full force and effect.

With respect to the issues determined by the above judgment, it is hereby CERTIFIED, in accordance with Rule 54(b), I.R.C.P., that the court has determined there is no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the above judgment shall be a final judgment upon which execution may issue and an appeal may be taken as provided by the Idaho Appellate Rules.

On June 24, 2020, the Mundens appealed to this Court.

## II. STANDARD OF REVIEW

"The granting or refusal of an injunction is a matter resting largely in the trial court's discretion." *Conley v. Whittlesey*, 133 Idaho 265, 273, 985 P.2d 1127, 1135 (1999) (quotation omitted). This Court reviews a discretionary decision for "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

*Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 488 P.3d 488, 496 (2021).

"This Court exercises free review over jurisdictional issues, including 'whether dismissal for lack of jurisdiction was properly granted.'" *Paslay v. A&B Irr. Dist.*, 162 Idaho 866, 868, 406 P.3d 878, 880 (2017) (quoting *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017)). In addition, when reviewing a motion to dismiss pursuant to I.R.C.P. 12(b)(6), "we apply the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated." *Employers Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017) (quoting *Joki v. State*, 162 Idaho 5, 8, 394 P.3d 48, 51 (2017)).

*Nemeth v. Shoshone Cnty.*, 165 Idaho 851, 854, 453 P.3d 844, 847 (2019).

This Court freely reviews Rule 12(b)(6) dismissals. *Paslay*, 162 Idaho at 868, 406 P.3d at 880.

Under Rule 12(b)(6), "[a]fter viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated." *Losser v. Bradstreet*, 145 Idaho 670, 673, 183 P.3d 758, 761 (2008) (quoting *Gallagher v. State*, 141 Idaho 665, 667, 115 P.3d 756, 758 (2005)). Dismissal "for failure to state a claim should not be granted 'unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Taylor v. Maile*, 142 Idaho 253, 257, 127 P.3d 156, 160 (2005) (quoting *Gardner v. Hollifield*, 96 Idaho 609, 611, 533 P.2d 730, 732 (1975)).

*Id.* at 869, 406 P.3d at 881.

"Statutory interpretation is a question of law over which this Court exercises free review." *Est. of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012)).

### III.    ANALYSIS

**A. The district court did not abuse its discretion in dissolving the TRO.**

On January 24, 2019, the district court issued an ex parte temporary restraining order preventing the County from enforcing Ordinance 2019-1 against the Mundens and granting the Mundens "unrestricted access to their properties . . . pending the resolution of this action." The TRO appears to have been based on Sherrilyn's declaration claiming that the Mundens' livestock would face starvation if the Mundens could not use the Road.

On January 31, 2019, the County filed a Motion to Dissolve the TRO. The County argued, among other things, that the Road was a public road, and that the Mundens were aware of this fact when they took possession of the property and sought to develop it. The County also asserted that the Mundens had not followed the procedure set forth in Idaho Code section 40-208(7) before challenging the legal status of the Road.

In response, the Mundens argued that whether the Road is a public road was not the dispositive issue regarding the issuance of the TRO; rather, the main issue before the district court was whether Ordinance 2019-1 would have caused irreparable harm to them.

A hearing on the County's motion was held on February 4, 2019. Sherrilyn testified at the hearing, clarifying that not *all* her livestock were located on the Upper Property. She testified that a majority of her cattle, the "mama cows," were located on the Lower Property, which is accessible year-round by a paved road that is maintained by the County. However, the Mundens' bulls and horses were located on the Upper Property that was accessible only by the Road. Sherrilyn admitted that she could provide feed and water to the cows via the paved road, but the fuel needed for transporting the feed was located on the Upper Property and was generally inaccessible.

The County argued that the Mundens misrepresented facts to the district court regarding the location of their cattle. The Mundens argued that dissolving the TRO at that point in time would

9

cause waste and irreparable harm to the Mundens' calving operation. The district court noted its discretion in determining whether to grant "the Temporary Restraining Order or a Preliminary Injunction:"

> Evidence here today that was provided to me does not suggest that there is irreparable harm at this point in time. There is not a clear right. This will have to be determined with regard to access of that road at some later date, but I find that there is no irreparable harm or waste that will follow if a Preliminary Injunction is not extended in this particular case, so I'm going to dissolve the Temporary Restraining Order, and it will dissolve and expire as of February 11th.

On appeal, the Mundens argue that they presented unrefuted evidence demonstrating waste if Ordinance 2019-1 were enforced preventing their use of the Road. The Mundens contend that the inability to farm one's land constitutes waste under IRCP 65(e). Thus, the Mundens claim that the district court's decision to dissolve the TRO was "clearly erroneous and an abuse of discretion."

The County responds by contending that the district court applied the correct standard in deciding whether to dissolve the TRO. The County argues that although "waste is a factor which may be considered in granting a preliminary injunction, it is not relevant for an ex parte TRO under Idaho Rule of Civil Procedure 65(b)." The County distinguishes between IRCP 65(b) (TRO) and 65(e) (preliminary injunction), arguing that the former does not contemplate a showing of waste, while the latter does. Further, the County asserts that "a preliminary injunction [] is a wholly separate and unique legal mechanism from an ex parte TRO." (Citing IRCP 65(e).) Consequently, the County asserts that the district court was correct in dissolving the TRO based on a lack of irreparable injury, loss, or damage to the Mundens.

In reply, the Mundens argue that the County's distinction between a TRO and a preliminary injunction is inaccurate because "[t]hey are in effect one and the same." Further, the Mundens argue that "whether to affirm a TRO is 'analyzed' as a 'motion for preliminary injunction.'" Finally, the Mundens assert that because the County failed to dispute their arguments regarding waste, the County has conceded that the district court erred in dissolving the TRO.

Idaho Rule of Civil Procedure 65 governs restraining orders and injunctions. Subsection (b) governs temporary restraining orders:

> (1) *Issuing Without Notice*. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> > (A)  specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable injury, loss, or damage* will result to the movant before the adverse party can be heard in opposition; and

(B)  the movant or the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

. . .

(3)  Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4)  Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice, or on shorter notice set by the court, the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

I.R.C.P. 65(b)(1)–(4) (italics added). Subsection 65(e) articulates the grounds for a preliminary injunction:

A preliminary injunction may be granted in the following cases:

(1)  when it appears by the complaint that the plaintiff is entitled to the relief demanded, and that relief, or any part of it, consists of restraining the commission or continuance of the acts complained of, either for a limited period or perpetually;

 (2)  when it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce *waste, or great or irreparable injury to the plaintiff*; . . . .

I.R.C.P. 65(e)(1)–(2) (italics added).

Federal Rule of Civil Procedure 65 is virtually identical to IRCP 65. *See* F.R.C.P. 65. Therefore, commentary on the federal rules is instructive here. *See e.g.*, WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. (3d ed.).  If a restrained party moves to dissolve a TRO, and that party is "prepared to offer sufficient evidence at a hearing to modify or dissolve the temporary restraining order . . . in effect, that proceeding becomes a hearing on a preliminary injunction." WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2953 (3d ed.). "If this occurs, the court should proceed with the hearing as if it were one under [Federal] Rule 65(a)," which governs preliminary injunctions. *Id.* "A preliminary injunction 'is granted only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal.'" *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997). The decision whether to grant or deny injunctive relief is left to the district court's discretion. *Id.*

We note that the record on appeal contains neither the Mundens' purported application for the TRO, nor their application for a preliminary injunction. The record simply contains the TRO

11

itself, the County's motion to dissolve it, and the Mundens' brief in opposition to it being dissolved. The record does contain the hearing transcript on the County's motion to dissolve, at the conclusion of which the district court ruled from the bench and ordered the TRO be dissolved.

The district court granted and issued the TRO on January 24, 2019. The County filed its motion to dissolve on January 31, along with several attachments, and the hearing on the motion was held on February 4, 2019. At the hearing, Sherrilyn testified and both parties submitted exhibits, including the Mundens' warranty deeds, maps of their property, and copies of the County ordinances. The district court interchangeably referred to the TRO as a preliminary injunction throughout the hearing. Although no application for a preliminary injunction was filed, we will treat the district court's decision to dissolve the TRO as if it were a decision on a preliminary injunction because a full evidentiary hearing on the TRO was conducted. *See* WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2953 (3d ed.).

We conclude that the district court did not abuse its discretion in dissolving the TRO. First, the district court "correctly perceived the issue as one of discretion." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. The district court stated: "[I]t is discretionary on the [c]ourt to make a determination of whether or not to grant the Temporary Restraining Order or a Preliminary Injunction." The district court also acted within the outer boundaries of its discretion and acted consistently with the applicable legal standards. The district court heard the testimony of Sherrilyn, during which she admitted that the vast majority of her cattle, including nearly 200 "mama cows and yearling heifers," were actually located on the Lower Property, which was accessible year-round by a paved road.

The district court stated that its main reason for issuing the ex parte TRO was the concern that the Mundens' *entire* herd of livestock was in danger of starvation. Upon hearing that only a small fraction of the Mundens' livestock were located on the Upper Property at the time the County's motion was heard, the district court concluded that there was not a threat of immediate and irreparable harm to the Mundens. The district court's decision was reached through an exercise of reason by weighing all evidence before it. The district court did not abuse its discretion in dissolving the TRO.

1. The district court did not err in awarding the County its attorney fees and costs incurred in seeking dissolution of the TRO.

After the district court dissolved the TRO, the County filed a memorandum of costs and Fees, arguing that any party that has been wrongfully enjoined or restrained is entitled to

12

reasonable attorney fees. The County included an exhibit detailing costs associated with challenging the TRO. The Mundens opposed the motion, arguing that it was premature. At a hearing addressing multiple motions, the district court granted the County's motion for attorney fees and costs related to the TRO, relying on IRCP 65(c).

On appeal, the Mundens argue that because the district court reserved its ruling on the merits of the dispute, the County's motion for attorney fees and costs was premature. The Mundens point to Rule 54(e), which only allows attorney fees to be awarded to the "prevailing party" after a final judgment issues. The Mundens also discuss *Phoenix Aviation, Inc. v. MNK Enterprises, Inc.*, 128 Idaho 819, 823, 919 P.2d 348, 352 (Ct. App. 1996), and argue that recovery of a bond "pursuant to an award of attorney fees and costs under [Rule 65(c)] is 'premature' when 'merits of the action [have] not yet been determined.'"

In response, the County contends that IRCP 65(c) allows a court to award attorney fees upon a determination that a TRO was wrongfully entered. The County also discusses *Phoenix Aviation*, arguing that its facts are "readily distinguishable." The County notes that in that case, a TRO was dissolved as a discovery sanction, as opposed to a determination by a district court that the order was wrongfully entered. Here, the County contends that because the district court held a hearing regarding the TRO and determined that the County had been wrongfully enjoined, it was appropriate to award attorney fees, even though the merits of the action had not yet been decided.

The Mundens respond by asserting that the rule set forth in *Phoenix Aviation* is unequivocally clear that fees are not allowed prior to a "final determination on the merits."

Idaho Rule of Civil Procedure 65(c) provides:

Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages, *including reasonable attorney's fees, sustained by any party found to have been wrongfully enjoined or restrained.* The State of Idaho or any political subdivision, its officers, and its agencies are not required to give security.

I.R.C.P. 65(c) (italics added).

The Idaho Court of Appeals has held that attorney fees related to a dissolved TRO should not be awarded until a final judgment has been rendered *or* the district court has made "an equivalent determination that the plaintiff was not entitled to an injunction." *Phoenix Aviation*, 128 Idaho at 823, 919 P.2d at 352. In *Phoenix Aviation*, the district court dissolved a TRO as a discovery sanction after the plaintiffs failed to respond to discovery requests. *Id.* at 821, 919 P.2d

13

at 350. After the TRO was dissolved, the enjoined party sought a judgment against the surety on the bond posted for the issuance of the TRO. *Id.* at 822, 919 P.2d at 351. The district court denied the motion, noting that "although the preliminary injunction had been dissolved, 'there [had] been no showing whatsoever . . . that the Preliminary Injunction was wrongfully issued or that [defendants] have been wrongfully enjoined or restrained.'" *Id.* On appeal, the Idaho Court of Appeals upheld the district court's decision: "Generally, an injunction may be deemed to have been wrongfully issued, so as to allow recovery on the bond, only if there has been a final judgment *or equivalent determination that the plaintiff was not entitled to an injunction.*" *Id.* at 823, 919 P.2d at 351 (italics added). The Court of Appeals further held that the defendants' motion for recovery on the bond was premature because "the merits of the action had not yet been determined." *Id.* at 824, 919 P.2d at 353.

Here, because the district court made an "equivalent determination" that the Mundens were not entitled to the TRO and that the TRO had wrongfully enjoined the County from enforcing Ordinance 2019-1, its award of attorney fees and costs to the County was appropriate. *See id.* at 823, 919 P.2d at 351; I.R.C.P. 65(c). Although the merits of the Mundens' action had not yet been litigated to completion, the district court conducted a full evidentiary hearing regarding the dissolution of the TRO, at which it heard testimony from Sherrilyn that tended to contradict her initial declaration filed in conjunction with the application for the TRO. Because the district court held that the TRO was entered under "false pretenses," it concluded that the County had been wrongfully enjoined from enforcing the ordinance. Thus, we affirm the district court's entry of an award for attorney fees and costs to the County in seeking to dissolve the TRO.

2. <u>The district court erred in awarding the County attorney fees and costs in excess of the $7,500 bond posted by the Mundens absent a showing of good cause by the County.</u>

After the district court granted the County's motion to dissolve the TRO, the County filed a motion for costs and fees in the amount of $15,085.64. At a hearing on July 1, 2019, the district court granted the County's motion pursuant to Rule 65(c). On August 23, 2019, the district court entered a Memorandum Decision and Order finding that the Mundens request for a TRO "was presented under false pretenses," and that the Mundens had "purposefully embellished the urgency of the situation." This conclusion led the district court to award the County fees in excess of the $7,500 bond posted by the Mundens.

The Mundens filed a motion to disallow the fees and costs, reasserting that they did not pursue the TRO in bad faith. The Mundens also filed a motion for reconsideration on the district court's award of attorney fees to the County. Along with this motion, Sherrilyn submitted another declaration, clarifying that she did not specify the number of livestock that were endangered in her application for the TRO. Additionally, attached as exhibits to the motion were photographs of cattle and calves that had perished as a result of this dispute. The County filed a motion to strike Sherrilyn's declaration, arguing that it was self-serving and contradictory to her prior declaration. The district court granted the County's motion to strike Sherrilyn's declaration and denied the Mundens' motion for reconsideration.

The Mundens argue that the district court abused its discretion in awarding the County attorney fees and costs "in excess of $15,000, well above the $7,500 bond posted by the Mundens." The Mundens assert that the "recovery of damages, costs[,] and attorney fees occasioned by the temporary restraining order is limited to the amount of the bond." (Citing *McAtee v. Faulkner Land & Livestock, Inc.*, 113 Idaho 393, 402, 744 P.2d 121, 130 (Ct. App. 1987).) The Mundens contend that the only exception to this rule "allowing for a collection of fees 'in excess' of the bond is where there has been a showing of 'malicious prosecution.'" Finally, the Mundens argue that the district court abused its discretion because it failed to employ the malicious prosecution standard, instead finding that the Mundens acted in "bad faith" by making "misrepresentations" to the district court. The Mundens argue that the district court abused its discretion by adopting the County's allegations without citation to the record or specific testimony. Finally, the Mundens request that even if this Court upholds the award of attorney fees, the amount should be reduced to $7,500 to comply with the rule from *McAtee*.

In reply, the County contends that the district court did not abuse its discretion in awarding the County an award in excess of the bond amount because the Mundens misled the district court in asserting that their entire herd of cattle was endangered by the Road's winter closure. The County asserts that the district court applied the correct standard from *McAtee*, finding that the Mundens brought their request for a TRO in bad faith. The County points to the differences in Sherrilyn's original declaration filed in support of the TRO and her testimony at the hearing on the County's motion to dissolve. Specifically, Sherrilyn testified at the hearing that the vast majority of her cattle were located on the Lower Property, which is accessible year-round by a paved road.

15

Therefore, the County argues, the district court properly found that the Mundens brought their application for the TRO in bad faith, allowing an award of fees in excess of the bond amount.

In response, the Mundens reiterate that the district court did not support its award of attorney fees with evidence or testimony in the record. The Mundens dispute that Sherrilyn misrepresented the situation regarding the location of the majority of her cattle. Specifically, they assert that Sherrilyn did not reference the specific location of the animals as a basis for the TRO.

IRCP 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages, including reasonable attorney's fees, sustained by any party found to have been wrongfully enjoined or restrained." I.R.C.P. 65(c). "In jurisdictions with rules or statutes similar to I.R.C.P. 65(c), most courts have held that there can be no recovery in excess of the bond absent a showing of malicious prosecution." *McAtee*, 113 Idaho at 402, 744 P.2d at 130. In *McAtee*, the Idaho Court of Appeals adopted the "majority rule," articulated by Justice Cardozo, which limits the restrained party's right to compensation to the amount of the bond posted by a plaintiff. *Id.* at 401, 744 P.2d at 129. The Court of Appeals noted that the rule strikes a balance "between protecting wrongfully restrained defendants and avoiding undue hardship for plaintiffs who present facially meritorious claims in good faith." *Id.*

While we appreciate the majority rule's attempt to strike a balance between these competing interests, we conclude that a better balance can be struck by creating a rebuttable presumption that the amount of a bond posted by a plaintiff seeking an ex parte TRO is adequate at the time it is set by the court. Such a presumption may be overcome by the defendant, upon a showing of good cause, that the amount of the bond was inadequate. This leaves the court with the discretion to impose attorney fees in excess of the bond amount if the party that was wrongfully restrained can provide good cause to show that the bond was inadequate. To be clear, we are expanding the rule set out in *McAtee* so that a party adversely impacted by the issuance of an ex parte TRO may nevertheless challenge the sufficiency of the bond.

As a result of this newly articulated rebuttable presumption, we vacate and remand the district court's award of attorney fees in the amount of $15,085.64. On remand, the district court is left with the discretion to determine the amount of attorney fees to award the County in defending the TRO, if the County can overcome the rebuttable presumption articulated in the

16

previous paragraph. Such a determination must be made on a case-by-case basis, depending on the specific facts presented.

**B. The district court did not err in granting the County's Motion to Dismiss because the Mundens failed to comply with Idaho Code section 40-208(7).**

After answering the Mundens' Amended Complaint and asserting counterclaims, the County filed a Motion to Dismiss, arguing that the Mundens had failed to state a claim upon which relief could be granted. The County asserted that the Mundens had not complied with the administrative procedures of Idaho Code section 40-208(7) before seeking judicial relief. The Mundens opposed the County's motion, arguing that Idaho Code section 40-208(7) did not apply to their action.

After a hearing on the motion, the district court granted the County's motion and dismissed the Mundens' amended complaint. Specifically, the district court applied the plain language of Idaho Code section 40-208(7), which mandates that "[a]ny person. . . seeking a determination of the legal status or width of a highway or public right-of-way *shall first petition* for the initiation of validation or abandonment proceedings" with the county commissioners. I.C. § 40-208(7) (italics added). The district court held that "a lawsuit seeking declaratory relief as to the legal status of a highway can only be pursued after a party has complied with the administrative procedures set forth in [I.C.] § 40-208(7)." Because the Mundens complaint sought "a legal determination as to the status of [the Road]," the district court concluded that it was barred from hearing the Mundens' claims. Further, the district court dismissed the remainder of the claims brought by the Mundens because those claims all "rel[ied] on the assumption that [the Road] is a private road."

On appeal, the Mundens first argue that the County's motion to dismiss for failure to state a claim was actually a motion to dismiss for lack of subject matter jurisdiction. The Mundens argue that the County "effectively alleg[ed] that [the] Mundens had failed to exhaust their administrative remedies before filing a claim in court." Thus, the Mundens assert that the "only issue before this Court as it pertains to the dismissal of the Mundens' complaint, is whether the district court had subject matter jurisdiction over Mundens' Amended Complaint as plead[ed]."

Next, the Mundens argue that they were not required to first initiate validation proceedings with the county board of commissioners before seeking judicial relief. First, the Mundens point to two cases from this Court, *Nemeth v. Shoshone County*, 165 Idaho 851, 453 P.3d 844 (2019), and *Palmer v. East Side Highway District*, 167 Idaho 813, 815, 477 P.3d 248, 250 (2020), asserting that the case at bar is dissimilar. The Mundens contend that they are neither seeking validation nor

17

abandonment of a public road; rather, they are pursuing inverse condemnation proceedings and a declaration that the road is private, among other claims. However, the Mundens assert: "[s]imply put, at issue in this case is the *very title to the road* on the Mundens' property, as well as conduct by the County." (Italics added.) The Mundens claim that Idaho Code section 40-208(7) "does not establish a judicial review process for a determination or designation of a public right of way or highway." (Emphasis in original.) The Mundens next contend that "the County cannot foist the procedural requirements of I.C. § 40-208(7) upon [the] Mundens' right to make claims with regard to their right, title[,] and use of their property—including the road which they hold title to, maintain[,] and pay property taxes for." Finally, the Mundens argue that section 40-208(7) "certainly does not provide the exclusive remedy for a takings claim under the Fifth and Fourteenth amendment[s] of the U.S. Constitution and a deprivation of rights under 42 U.S.C. § 1983."

In response, the County first argues that the difference between an IRCP 12(b)(1) and 12(b)(6) motion is irrelevant because "the standard of review is the same under either rule and either can be used as a basis for affirming the dismissal" of the Mundens' complaint. Next, the County contends that the plain language of Idaho Code section 40-208(7) required the Mundens to first petition the county board of commissioners for validation or abandonment proceedings with respect to the Road. The County notes that the statute provides that any person seeking "a determination of the legal status" of a highway or public right-of-way must first petition for the initiation of validation or abandonment proceedings with the county board of commissioners.

The County asserts that the Mundens clearly sought a determination of the legal status of the Road because their complaint asked for a declaration of their property rights as it pertains to the Road. The County contends that the Mundens concede that this case turns on the legal status of the Road by acknowledging that "at issue in this case is the very title and interest in the road." The County also notes that the cases cited by the Mundens, *Nemeth* and *Palmer*, involved parties seeking a determination of the legal status of a road after first exhausting their administrative remedies by filing validation or abandonment proceedings with the respective county boards. Thus, the County argues, "filing for validation or abandonment proceedings is a mandatory condition precedent to filing suit" in the district court. Accordingly, the County asserts that "the district court is unable to hear a case seeking a determination of the legal status of a highway unless a plaintiff ha[s] first petitioned for validation or abandonment proceedings." The County finally

18

urges this Court to affirm the district court's dismissal of the Mundens' entire complaint because the remainder of their claims rested on the assumption that they owned the Road.

In reply, the Mundens assert for the first time that Idaho Code section 40-208(7) is ambiguous; therefore, the Court must engage in statutory interpretation "considering the public policy and legislative intent." The Mundens argue that the term "legal status" as used in Idaho Code section 40-208(7) is ambiguous and urges the Court to consider the context of the whole statute, as well as the legislative intent. The Mundens contend that the statute was "intended to provide a procedure to protect private property rights by allowing the public, and property owners, to pursue a process in which they could a) establish a right to access property via a public road or b) seek an abandonment or extinguish a public right of way that may be an impediment to property rights.

Idaho Code section 40-208(7) provides:

Any person. . . seeking a determination of the *legal status* or the width of a highway or public right-of-way *shall first petition for the initiation of validation or abandonment proceedings*, or both, as provided for in sections 40-203(1)(b) and 40-203A(1), Idaho Code. If the commissioners having jurisdiction over the highway system do not initiate a proceeding in response to such a petition within thirty (30) days, the person may seek a determination by quiet title or other available judicial means. . . . Provided that nothing in this subsection shall preclude determination of the legal status or width of a public road in the course of an eminent domain proceeding, as provided for in chapter 7, title 7, Idaho Code.

I.C. § 40-208(7) (italics added). In turn, Idaho Code section 40-203(1)(b) allows "[a]ny . . . property holder . . . [to] petition the [the county commissioners] for abandonment and vacation of any highway or public right-of-way within their highway system." I.C. § 40-203(1)(b). Idaho Code section 40-203A(1) allows any resident to "petition the board of county or highway district commissioners . . . to initiate public proceedings to validate a highway or public right-of-way." I.C. § 40-203A(1).

The rules for statutory interpretation are well known:

The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

19

*Saint Alphonsus Reg'l Med. Ctr. v. Raney*, 163 Idaho 342, 345, 413 P.3d 742, 745 (2018) (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

The Mundens cite to *Nemeth*, asserting it has "no application whatsoever" to their case. 165 Idaho at 851, 453 P.3d at 844. In *Nemeth*, landowners petitioned the Shoshone County Commissioners to validate a public right-of-way across federal land under Idaho Code section 40-204A. *Id.* at 853, 453 P.3d at 846. When Shoshone County failed to act on the petition, the landowners filed a declaratory judgment action seeking validation of the road pursuant to Idaho Code section 40-280(7). *Id.* at 854, 453 P.3d at 847. Importantly, the landowners in *Nemeth* complied with section 40-208(7) because they "first petition[ed the county] for the initiation of validation or abandonment proceedings." *See* I.C. § 40-208(7).

The Mundens also attempt to distinguish this Court's recent decision in *Palmer*, where a purported public right-of-way crossed over several privately-owned properties. 167 Idaho at 816, 477 P.3d at 251. After an adjacent landowner requested confirmation from the county that the road was in fact a public right-of-way, the county adopted a resolution to initiate validation proceedings with respect to the road. *Id.* The owners of the private property disputed that the road was a public right-of-way and filed a formal petition for abandonment proceedings pursuant to Idaho Code section 40-203(1)(b) (as required by Idaho Code section 40-208(7)). *Id.* at 820 n.6, 477 P.3d at 255 n.6. Also in *Palmer*, this Court acknowledged that "Idaho Code section 40-208(7) established validation and abandonment proceedings as *the proper means of resolving disputes about the status or width of highways* (as opposed to resolving these disputes through quiet title actions)." *Id.* at 821 n.7, 477 P.3d at 256 n.7 (italics added).

As a preliminary matter, we decline to consider the Mundens' argument that Idaho Code section 40-208(7) is ambiguous.

> For this Court to consider an issue, the appellant must identify legal issues and provide authorities supporting the arguments in its opening brief. I.A.R. 35. "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief."

*H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 684, 339 P.3d 557, 569 (2014) (quoting *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)). The Mundens did not argue that section 40-208(7) was ambiguous until their reply brief in response to the Respondent's brief. Nowhere in the Mundens' opening brief did they assert that the term "legal status" was ambiguous. Consequently, we will not consider the Mundens' statutory interpretation argument.

Even if we were to consider whether the statute is ambiguous, Idaho Code section 40-208(7) plainly requires that any person "seeking a determination of the legal status or the width of a highway or public right-of-way *shall first* petition for the initiation of validation or abandonment proceedings, or both, as provided for in [Idaho Code sections 40-203(1)(b) and 40-203A(1).]" I.C. § 40-208(7) (italics added). "The word *shall*, when used in a statute, is mandatory." *Paolini v. Albertson's Inc.*, 143 Idaho 547, 549–50, 149 P.3d 822, 824–25 (2006) (quoting *Goff v. H.J.H. Co.*, 95 Idaho 837, 839, 521 P.2d 661, 663 (1974) (italics in original).

The Mundens' complaint sought a "declaration of their property rights" regarding the Road. Specifically, the complaint alleged that the Mundens "are entitled to a declaration invalidating Bannock County Ordinance 2019-1 and any other related decrees or actions pertaining [to the] Mundens' rights to South Garden Creek Road, due to the County's improper purpose and procedure in issuing such decisions affecting [the] Mundens' [r]ights." However, the Mundens concede that the heart of this dispute concerns "the very title to the road on [the] Mundens' property." In fact, their briefing admits, "[o]bviously, the parties dispute the very title and interest in the road."

Idaho Code section 40-208(7) makes clear that the Mundens were required to *first* petition the Bannock County board or highway district to determine the legal status of the Road before filing their complaint in the district court. I.C. § 40-208(7); *see also Nemeth*, 165 Idaho at 851, 453 P.3d at 844; *Palmer*, 167 Idaho at 814, 477 P.3d at 249. Only upon a decision by the commissioners, or a refusal to initiate such proceedings within the prescribed time limits, may a claimant seek judicial relief. *See id.* ("If the commissioners having jurisdiction over the highway system do not initiate a proceeding in response to such a petition within thirty (30) days, the person may seek a determination by quiet title or other available judicial means.").

It is undisputed that the Mundens did not file a petition with the Bannock County Board of Commissioners or any other appropriate body to initiate determination of the Road's legal status before filing their complaint in district court. The Mundens concede that their complaint concerns the legal status of the Road by repeatedly acknowledging that the heart of this dispute concerns the "very title and interest in the road." Although the Mundens claimed below that the Road was their private road, they explicitly acknowledged that it was a public road by filing an application and permit to use the Road during the construction of their barn. Given the disputed status of the Road, the Mundens should have first petitioned the County to initiate abandonment proceedings

21

before seeking judicial relief. Consequently, we affirm the district court's dismissal of the Mundens' complaint.

     1. <u>The district court erred when it dismissed the Mundens' amended complaint with prejudice.</u>

Although we affirm the district court's dismissal of the Mundens' amended complaint, we vacate the district court's order dismissing their complaint *with prejudice*. After granting the County's motion to dismiss, the district court first entered a "Judgment" on August 15, 2019, dismissing the Mundens' complaint. The entirety of the judgment stated: "JUDGMENT IS ENTERED AS FOLLOWS: the Plaintiffs' First Amended Complaint is dismissed. IT IS SO ORDERED." On August 20, 2019, the district court entered an "Amended Judgment," which stated:

> Judgment is entered against Plaintiffs and in favor of Defendant as follows:
>
>     1. On July 2, 2019, this Court issued an order granting attorney fees associated with Defendant's motion to dissolve the Temporary Restraining Order in this Case.
>
>     2. Defendants are hereby awarded attorney fees against Plaintiff in the amount of $15,030.00 and costs as a matter of right in the amount of $55.64, for a TOTAL JUDGMENT against Plaintiff in the amount of $15,085.64.

After both parties sought clarification regarding the finality of these judgments, the district court entered a "Second Amended Judgment" on November 13, 2019, which dismissed the Mundens' amended complaint with prejudice. The district court also dismissed the County's counterclaims, but without prejudice.

On appeal, the Mundens contend that despite their repeated attempts for clarification of the district court's judgment, "the district court never provided any explanation or reasoning justifying a dismissal of [the] Mundens' claims with prejudice." The Mundens argue that "a dismissal for lack of subject matter jurisdiction cannot be a dismissal with prejudice." (Citing *Telford v. Smith County, Texas*, 155 Idaho 497, 504, 314 P.3d 179, 186 (2013).) The Mundens also note that the district court dismissed the County's counterclaims without prejudice, allowing them to file suit against the Mundens again and foreclosing the Mundens' ability to defend the County's claims in the future.

The County does not dispute that the district court's dismissal of the Mundens' complaint with prejudice was in error. As such, the Mundens argue that the County has conceded that the district court erred in dismissing the Mundens' claims with prejudice.

Dismissals with prejudice are only granted under specific circumstances due to their finality:

> A dismissal with prejudice connotes an adjudication or final determination on the merits and extinguishes or bars any future claim." 24 Am.Jur.2d Dismissal § 1 (2008) (footnotes omitted). "The case law holds, consistent with Rule 41(b), that a dismissal for lack of subject matter jurisdiction cannot be a dismissal with prejudice." *Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir. 2013).

*Telford*, 155 Idaho at 504, 314 P.3d at 186. "We have clearly stated that a dismissal with prejudice operates as a final judgment for purposes of res judicata." *Maravilla v. J.R. Simplot Co.*, 161 Idaho 455, 458–59, 387 P.3d 123, 126–27 (2016) (quoting *Scott v. Agric. Prods. Corp.*, 102 Idaho 147, 151, 627 P.2d 326, 330 (1981)). Further, dismissals with prejudice are a "drastic remedy which should be used sparingly." *Kirkham v. 4.60 Acres of Land in Vicinity of Inkom, Bannock Cnty.*, 100 Idaho 781, 784, 605 P.2d 959, 962 (1980).

When the district court entered its judgment dismissing the Mundens' complaint with prejudice, it did not give a reason for doing so. The dismissal was originally granted because the district court held that the Mundens failed to exhaust their administrative remedies from the County before filing for judicial relief. The district court further held that it did not have jurisdiction over the Mundens' amended complaint because of their failure to follow the requirements of Idaho Code section 40-208(7). Therefore, there was no basis for the district court to dismiss the Mundens' complaint with prejudice. Accordingly, we vacate the district court's order dismissing the Mundens' complaint with prejudice and remand the case with instructions to dismiss the complaint without prejudice.

2. The district court failed to enter a final judgment from which the Mundens could appeal; therefore, we vacate the district court's March 10, 2020, award of attorney fees to the County.

At a hearing held on March 2, 2020, the district court heard argument on the Mundens' several pending renewed motions filed after the entry of multiple "judgments" from the district court. The district court concluded at the hearing that it lacked jurisdiction to hear any of the Mundens' motions due to the entry of what it believed was a final judgment. The district court then awarded attorney fees to the County for defending those motions, finding that the Mundens brought the motions frivolously. On March 10, 2020, the district court entered an order awarding the County fees in the amount of $6,920.

23

The Mundens allege on appeal that the district court erred in awarding attorney fees to the County for the "post non-final judgment motions." The Mundens assert that the district court's order violated the procedures set forth in Rule 54 and that the district court clearly abused its discretion.

The County responds by asserting that any error related to this award of fees was invited by the Mundens' own conduct. The County again contends that because the Mundens filed an appeal, they "led the district court to reasonably believe that its November 13, 2019[,] judgment was a final appealable judgment." Therefore, the County contends, the district court's later determination that it lacked jurisdiction over the case was permissible.

As a preliminary matter, we conclude that the County's reliance on the invited error doctrine is misplaced. The invited error doctrine stands for the principle that a party may not complain of an error that it has previously acquiesced in. *Taylor v. McNichols*, 149 Idaho 826, 833, 243 P.3d 642, 649 (2010). It is "[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." *Id.* The Mundens did not "prompt" or "encourage" the district court to enter multiple "judgments" that were not final for either failure to comply with IRCP 54 or to resolve all pending claims between the parties. Rather, the Mundens repeatedly and appropriately sought to be heard by the district court to clarify the meaning of its duplicative and confusing judgments.

In short, the Mundens were left with no other legal avenue by which to be heard, either in the district court or by an appellate court, due to the district court's failure to enter a final appealable judgment at multiple junctures. Consequently, we vacate the district court's award of attorney fees to the County on March 10, 2020.

**C. The district court erred in issuing a writ of execution before there was a final appealable judgment.**

On January 29, 2020, the County filed an application for a writ of execution for its attorney fees. The writ was signed by the court clerk on January 30, 2020.

The Mundens argue on appeal that it was error for the district court to issue a writ of execution because the district court's November 13, 2019, judgment was not a final, appealable order. The Mundens also assert that at the time the writ was issued, "there were pending motions

before the [c]ourt, including a Rule 60 motion for relief from a judgment."[3] Further, the Mundens contend that the writ was signed by the clerk before they could object to its issuance.

In response, the County argues that because the district court entered an appealable judgment *after* the writ was issued, any error associated with the writ is harmless. The County also contends that IRCP 69 "allows for a writ of execution to be issued when there is [a] partial judgment which has been certified as final," which was eventually entered by the district court only upon this Court's show cause order.

The County argues that even if the writ was prematurely issued, the Mundens have not shown that their substantial rights were affected between January 30, 2020 (the date the writ was issued) and June 8, 2020 (the date the district court issued its amended final judgment and 54(b) certification). The County contends that any error relating to the issuance of the writ was "invited by Appellants' own action of filing an appeal on December 27, 2019." In reply, the Mundens argue that the premature issuance of the writ did in fact prejudice them because they were prevented from challenging its issuance, posting a bond to avoid the need for a writ, or asserting exemptions.

Idaho Rule of Civil Procedure 69 governs the procedure for issuing writs of execution: "An appealable final judgment, or a partial judgment if certified as final under Rule 54(b), for the payment of money, or a court order for the payment of money, is enforced by a writ of execution unless the court directs otherwise." I.R.C.P. 69(a). The Idaho Court of Appeals has held that "an uncertified partial summary judgment, not being final or appealable, will not support a writ of execution." *CIT Fin. Servs. v. Herb's Indoor RV Ctr.*, 108 Idaho 820, 821 n.1, 702 P.2d 858, 859 n.1 (Ct. App. 1985).

As noted above, the County's reliance on the invited error doctrine is misplaced. The district court failed to issue a final appealable judgment until June 8, 2020, after this Court ordered it to do so. Consequently, the writ of execution was prematurely issued. This Court issued an order in June of 2020 finding that the district court's November 13, 2019, judgment was not final. In addition, even though the Mundens filed a notice of appeal after the district court entered its November 13, 2019, judgment, the Mundens did not "invite" the premature issuance of the writ. The Mundens had filed several motions with the district court seeking clarification of the various judgments issued by the district court, all of which were dismissed. The Mundens consistently asserted below that the district court's judgments were not final and needed to be amended or

---

[3] The district court never ruled on the Mundens' Rule 60(a) motion for correction of the judgment.

clarified. Because they could not otherwise be heard in the district court, the Mundens likely chose to file a notice of appeal for lack of a better option. The district court made it clear that it believed its judgment to be final by refusing to hear the Mundens' requests for clarification and reconsideration.

Even though the district court eventually issued a Rule 54(b) certification allowing the Mundens to appeal, the writ still should not have been issued until after the entry of a final judgment. However, because the County is entitled, at a minimum, to the bond amount of $7,500, this error is harmless. We need not decide whether the district court erred when it released the bond to the County.

### D. No attorney fees or costs will be awarded on appeal.

Both the Mundens and the County seek attorney fees and costs on appeal. Because both parties have prevailed in part, we decline to award attorney fees or costs to either party on appeal. *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 813, 452 P.3d 809, 835 (2019).

### IV.  CONCLUSION

For the reasons discussed above, we affirm the district court's decisions dissolving the TRO and dismissing the Mundens' amended complaint. While we vacate the district court's March 10, 2020, award of attorney fees to the County, we nevertheless affirm the district court's award of attorney fees and costs to the County incurred in seeking to dissolve the TRO, but remand the case for the district court to reconsider the actual amount of attorney fees in light of the rebuttable presumption we have articulated in this opinion. We vacate the district court's judgment dismissing the Mundens' amended complaint with prejudice and remand the case for further proceedings consistent with this opinion. No attorney fees or costs are awarded on appeal.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.


### ON DENIAL OF PETITION FOR REHEARING

STEGNER, Justice.

The Mundens petitioned this Court for rehearing regarding three issues: first, the Mundens allege that their regulatory takings claim was not subject to the judicial review requirements set forth in Idaho Code section 40-208(7); second, the Mundens assert that if the Court grants their petition "as it pertains to their regulatory claims, it should also allow the district court to consider

Mundens' physical takings claims[;]" finally, the Mundens allege that "the district court's dissolution of [the temporary restraining order] was an abuse of discretion[.]"

With respect to the Mundens' first claim, we conclude that the Mundens' regulatory taking argument was undeveloped in their briefing on appeal. The Mundens' initial brief failed to adequately raise a regulatory takings claim; rather, it merely mentioned in passing the claim they now more elaborately explain in their petition for rehearing. The Mundens argued in their opening brief that Idaho Code section 40-208(7) "certainly does not provide the exclusive remedy for a takings claim under the Fifth and Fourteenth amendment [sic] of the U.S. Constitution and a deprivation of rights under 42 U.S.C. § 1983[.]" The argument the Mundens now present in their petition was not adequately raised in their original briefing. This Court "will not consider an issue not 'supported by argument and authority in the opening brief.'" *McCandless v. Pease*, 166 Idaho 865, 872, 465 P.3d 1104, 1111 (2020). We take this position for several reasons: the principal one being that the failure to apprise one's opponent of the issues to be addressed in the opening brief precludes that opponent from responding to it. Consequently, from a fundamental fairness standpoint, we decline to address the Mundens' contentions regarding both their physical and regulatory takings on rehearing.

Regarding the Mundens' request that the district court be allowed to consider their physical takings claim on remand, we conclude this request is premature. The gravamen of the Mundens' complaint sought a determination of the status of the Road at the heart of this litigation. We concluded that the Mundens were obliged to comply with Idaho Code section 40-208(7) and bring a petition before the Bannock County Commissioners before they could bring suit in Idaho district court. The reason the Mundens' takings claim is premature is because the status of the Road has yet to be determined. As noted in the opinion in this case "the Mundens concede that the heart of this dispute concerns 'the very title to the road on [the] Mundens' property.'" The status of the Road is unresolved by this decision. Because the status of the Road must be ascertained before it can be determined whether a taking has occurred, the Mundens' request to remand this case to the district court to determine what, if any, taking has occurred is premature.

Finally, with respect to their third argument, we perceive the Mundens' request to revisit our analysis regarding the district court's dissolution of the temporary restraining order as a request to merely reweigh our decision concluding the district court did not abuse its discretion when it dissolved the Mundens' temporary restraining order. The Mundens allege that this Court

incorrectly concluded that their "Ex Parte Motion for Emergency Relief Pendente Lite" was absent from the record on appeal. A thorough review of the record demonstrates that no such document is contained in the record before us. That being said, we previously noted that the declaration of Sherrilyn Munden, filed in support of the Ex Parte Motion, is part of the record before us; we previously considered that declaration and concluded that the district court did not abuse its discretion in dissolving the temporary restraining order. We decline the Mundens' invitation to reconsider our decision one more time.

For the reasons stated, the Mundens' petition for rehearing is denied.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.